**GLENN, Collector of Internal Revenue, v. SMITH.**

**No. 7543.**

Circuit Court of Appeals, Sixth Circuit.

July 3, 1937.

F. E. Youngman, of Washington, D. C. (James W. Morris, Sewall Key, Charles A. Horsky, Bunk Gardner, Oldham Clarke, and A. M. Wilding-White, all of Washington, D. C., on the brief), for appellant.

James Park, of Lexington, Ky. (Gayle A. Mohney and Stoll, Muir, Townsend & Park, all of Lexington, Ky., on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from a judgment allowing recovery of taxes collected from appellee pursuant to the provisions of the Kerr-Smith Tobacco Act, 48 Stat. 1275, c. 866, U.S.C., title 7, c. 28, § 751 et seq. The sole question is whether this act constituted a valid exercise of the federal taxing power.

The Kerr-Smith Act [1] see 7 U.S.C.A. §§ 751–766 was enacted as a companion measure to the Agricultural Adjustment Act (as amended, 7 U.S.C.A. § 601 et seq.), which was held invalid in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914. Section 8 of the Agricultural Adjustment Act, 48 Stat. 34, 7 U.S.C. § 608, empowered the Secretary of Agriculture:

"(1) To provide for reduction in the acreage or reduction in the production for market, or both, of any basic agricultural commodity, through agreements with producers or by other voluntary methods, and to provide for rental or benefit payments in connection therewith or upon that part of the production of any basic agricultural commodity required for domestic consumption, in such amounts as the Secretary deems fair and reasonable, to be paid out of any moneys available for such payments."

A subsequent section of the act (section 11 [as amended, 7 U.S.C.A. § 611]) included tobacco among the listed basic agricultural commodities, and pursuant to the act the Secretary of Agriculture offered so-called "Tobacco Production Adjustment Contracts" to producers of Burley tobacco in which they agreed to reduce their acreage of tobacco one-third or one-half, as

---

[1] Repealed on February 10, 1936, 49 Stat. 1106. See 7 U.S.C.A. §§ 751–766.

448

the producer might elect. The Kerr-Smith Act purported "To place the tobacco-growing industry on a sound financial and economic basis, to prevent unfair competition and practices in the production and marketing of tobacco entering into the channels of interstate and foreign commerce, and for other purposes." 48 Stat. 1275. An amendment to this statement of the purpose of the act added that it was an act to raise revenue. 49 Stat. 778, § 43. The declared policy of the act was as follows:

"Sec. 2. It is hereby declared to be the policy of Congress to promote the orderly marketing of tobacco in interstate and foreign commerce, to enable producers of tobacco to stabilize their markets against undue and excessive fluctuations, to prevent unfair competition and practices in putting tobacco into the channels of interstate and foreign commerce, and to more effectively balance production and consumption of tobacco, and to relieve the present emergency with respect to tobacco." 48 Stat. 1276.

The act levied a tax upon the sale of tobacco produced, but those producers who contracted with the Department of Agriculture to restrict acreage were entitled to and were given under the Kerr-Smith Act tax warrants which in practical operation exempted them from the imposition of the tax. The District Court held that the act in question was an act regulating agricultural production; that the tax levied thereunder was a mere incident thereto, and that the statute was not a proper exercise of the taxing power of Congress nor of the power of Congress to regulate interstate and foreign commerce.

We think that under the decision in United States v. Butler, supra, this judgment must be affirmed. The object of the enactment was to increase the price of tobacco for the producer by decreasing the quantities produced, by issuing tax warrants to producers who under agreement with the Secretary of Agriculture were to reduce their acreage and crops. The contract which appellee had the choice of signing required that either one-third or one-half of the base tobacco acreage chosen for the farm covered thereby should be kept out of production in 1934. It prohibited the marketing from the farm of tobacco planted in 1934 in excess of the initial production allotment unless such allotment should be adjusted by the Secretary of Agriculture under section 5 (a), 48 Stat. 1277. Other detailed regulations were included in the contract, but these suffice to show that the act was not a true revenue measure, but attempted to establish a control of agricultural production. While tobacco which is marketed. at auction warehouses does in large percentages enter into interstate commerce, the purpose of this legislation was to stabilize prices by restriction of production. This is the legislative attempt held invalid in United States v. Butler, supra. Cf. Robertson, Collector, v. Taylor (C.C.A. 4) 90 F.(2d) 812, decided June 14, 1937.

The judgment is affirmed.